Mr. Kearney Thank you Judge Smith. May it please the court, I'd like to take just one second before I begin to thank you all for moving this setting for my family. I appreciate that and thank you for indulging that and moving this to the setting for us and for our client. My name is Kyle Kearney. My co-counsel Gaines West and I represent John Doe in his lawsuit against the Univ of N TX Hlth Sci Ctr in the individual defense for their conduct in withholding notice of the critical terms and conditions of his medical leave of absence that causes dismissal from medical school in his fourth year. There's three questions presented in the briefs. One, whether the res judicata ruling was wrong. Two, whether the fact issues precluded summary judgment on the section 1983 claims. And three, whether sovereign or qualified immunity should be limited under these facts. But I want to first jump into the key issues, I believe, of the section 1983 due process claim under the second question presented because those fact issues in that question are really integral to each of the questions. And what is the essence of your claim? The essence of our claim is that Dr. Filippetto, Dr. Meyer, and Dr. Mormon withheld the notice that would have given Doe the terms and conditions that he was supposed to comply with during his medical leave of absence in medical school. So the key fact issues in dispute are about whether he received the required constitutional notice in this context. To try to be a little bit helpful to contrast from our position, appellees believe that emails sent to his school email account in 2017 while he was on medical leave of absence and unenrolled from school, right before they dismissed him in an SPC proceeding at the tail end, towards the end of his medical leave of absence, that that was enough notice while he wasn't checking emails because he was on medical leave of absence. But he never received the letter, the document that told him what he was supposed to do by that time. Was it mailed to him or conveyed to him at his last known address? For the first half of the litigation, it was claimed that it was emailed to him, but it was never sent to him. So if you look at ROA 799 through 800, there's kind of a demonstrative of metadata describing the underlying documents that the defendants provided. In the case below, ROA 661, Filippetto provided an email to himself saying, I hand-delivered the letter and then talked internally between him and his assistant, but nobody ever gave the letter to the registrar. John Doe provided a screenshot of his emails. He never received the letter. He didn't get the letter. What John Doe did get and put into the record is a medical leave of absence form that was signed by John Doe and countersigned by Dr. Filippetto. Those are the only documents that we know they exchanged. It's a disputed fact issue whether Dr. Filippetto actually gave a letter dated November 1, 2016. Dr. Filippetto claims that that letter that says November 1, 2016, which has a note on it saying it carbon copied the registrar and another UNT administrator named A.J. Randolph, who is the corporate representative, but even despite those carbon copy notes, they never could produce an email that that actually . . . What happened after that? Did he have any further contact with the authorities? Yes, Your Honor. He received an email from the registrar at ROA-2609. UNT's registrar emailed notice of the effective medical leave of absence to Doe's Hotmail account. He provided his Hotmail personal email account on the countersigned medical leave of absence form. He received notice from the registrar to his personal email address as well as to his school account and then went on to medical leave of absence. He knew generally the things he needed to do. He knew he needed to see a doctor and get better because he had sleep apnea that was causing depression. He didn't know before. In the record, it's clear he completed three years of medical school undisturbed. He'd never had any issues that had risen to this level before. When I asked Dr. Filippetto about that in his deposition, he couldn't mention any other issues. There's no dispute that he completed . . . put time, money and energy into three successful years of medical school and then in his fourth year, had a sleep apnea issue that came up. And so when he started getting . . . missing some emails at the beginning of that fourth year, people started getting worried about him and then he went to a doctor and got help, but he needed medical leave. And so at the SPC meeting, he was permitted to attend the first part of that where he gave his statement in 2016 and provided, you know, I've been having these difficulties. I'm going to need some help. And they set aside the academic claims that any of that was a deficiency and Doe testified that they set those aside and there's no affidavits from anybody else at UNT disagreeing with that or otherwise. They simply put in a form letter and copy and pasted it into their minutes saying . . . Thereafter, he never heard from them. Is that your argument? That's a point in the argument. That's not the critical reason that he didn't get notices because if you look at the November 1, 2016 letter, there's at least three drafts of it in the letter which Dr. Filippetto couldn't identify which one he gave to John Doe. What does your client argue? Does he say, I never . . . I took a leave of absence. I left out. I never heard from him after that. Is that what he's saying? He didn't receive any communication . . . I'm asking you a question. Is that correct? I mean, after he left, after he took his leave and he's gone, he never heard from him after that? That's correct. They didn't call him or meet with him, communicate with him about how he's doing during the medical leave of absence or anything like that. Did he have a peer before them again? No, not until after they called him on the phone after they had a second SPC meeting. SPC stands for Student Performance Committee. They sent him a couple of emails to his school email account that he wasn't checking in June of 2017 and said, you didn't meet these deadlines that were mentioned in the November . . . Well, he provided the school his personal email account and then they didn't give him notice that they were going to convene . . . But he still had his school email. He could access it. He just didn't. There were issues with that, but he could access his school email account. That's not . . . He chose not to because he was tired of getting emails from other school people. And that . . . Right. He didn't know he needed to, frankly, because he was . . . Okay, but the point is they sent it to something he did have, even if it was not something he knew he needed to look at. Well, here's the thing about that. The second SPC meeting in 2017, he . . . let's pretend he got the notice. He didn't, but even if he got that . . . those school email accounts and went to that meeting, he was going to show up . . . and they were going to say, you failed all these terms and conditions that he didn't know about. And that's kind of a . . . you know, in Apley's brief, they say he simply failed a test and that's essentially why he . . . But that's the essence of your claim then, is that he never received any notice from them that he did not comply with. He . . . they dismissed him from school because he didn't meet . . . their claim is he didn't meet deadlines on May 1st of 2017 that he was supposed to give them a notice by May 1st . . . that he was supposed to be medically cleared by that date . . . that he was also supposed to pass a national board exam, which he did pass because he knew he generally needed to do that . . . but didn't provide them a score by that date, because he didn't know May 1st was the date. And, it also told him he was on academic probation, if he would have gotten that November 2016 letter . . . because that would tell you, I'm on thin ice. I'm not just on medical leave of absence, but I'm really in jeopardy. And, if you look at . . . The whole essence of your claim is that he never got any of the communication from the doctors . . . that apprised him of his condition and his need to stay in touch and attend hearings. Is that your case? And, that's a fair summary of the case, is that he didn't. And, I would just add that it's important to look at the disputed fact issue of did he get the November 1st, 2016 letter or not . . . because that tells you, I've got deadlines to meet and I'm on academic probation. If you look at ROA . . . Let's talk about that letter. Why didn't he get that letter? They didn't email it to him. Their corporate representative, A.J. Randolph, says email is the official communication from the school. They want to beat John Doe up about that because they want to say, well he weren't checking your email in June of 2017 . . . when we wanted to round up a hearing. Is that correct? Was he not checking his email at that time? He was not checking his school email account in June of 2017. Doesn't seem to me you've got a leg to stand on. But, he didn't know he needed to and if they had given him the November 1st, 2016 letter . . . that outlined the terms and conditions of his leave of absence, then he could have dealt with that. But, and in fact, in Dr. Filippetto's deposition, he says if he didn't like the terms and conditions of his medical leave of absence . . . he could have appealed it. And, if you look at Dr. Filippetto's November, 2016 letter at the bottom, it says you can appeal this in five days. You can't appeal it, if you don't get the letter. So, you're asking the medical center here, to accept his word that he didn't check his email and that makes his case. They sent the email to him at his last email address, as I understand it. And, he had quit checking that email. And, now we're going to hold the hospital or the university, whomever is involved in this case, liable because he didn't check his email. Is that the essence of your case? No. Judge Jolly, I want to address your question with . . . your question is very similar to the one Judge Haynes asked me a moment ago. And, I want you to think about if he went to the SPC meeting . . . Let's say he got the letter and he shipped the email and showed up to the SPC meeting. And, they say, you didn't do 1, 2, 3, 4, these terms and conditions. But, then he could have had the conversation about why he didn't do 1, 2, 3, 4, if he'd shown up to something he should have known about. But, let me ask you, because you're about to run out of time, what about the res judicata? Which is fairly critical, because the discussion we just had is about the individual defendants. But, as far as the school, isn't there a res judicata? There is, Your Honor. On the res judicata issue, our main issue there is that, yes, Texas has a broad transactional approach to reviewing facts . . . and determining whether they're operatively in the same series of transactions. But, in addition to time and space, which the issues involved in the state court lawsuit were fairly narrow . . . He came to us and asked to file a lawsuit in Tarrant County, was that I have a medical leave of absence that was signed by the Dean. It says July 2017 on it. The dispute at that time appeared to be, do you go back to school by July 1 or July 31st? So, it was a narrow procedural issue dealing with the procedures of 2017. This case is about whether they intentionally withheld the notice in November 1st of 2016, for the medical leave of absence. But, it's all cubbied around whether he could go back to the school. And so, why isn't that? The broad res judicata notion is, you shouldn't just bring . . . If you've got the problem of, I want to go to the school, you can't just bring a case . . . And, you won't let me. This is the Y, this is the Z, in three different cases, right? It's . . . Well, it's . . . I just want to make sure I understand your point. It's two different cases. But, he brought the procedural due process claim only about the 2017 SPC hearing, which is a different . . . I mean, Dr. Filippetto happened to be named as an official immunity actor, because he's the dean of the medical school. And, you need that, obviously, for sovereign immunity purposes. But, it just as easily could have been the doctor named Alan Potowicz, who was the chair of that SPC. Because, you're there, it's just dealing with, did that committee, the people who were serving there, give him the proper notice and allow him to respond? And, this is . . . Oh, I actually received a letter that I know that Dr. Filippetto didn't give to me. And, I also know that he and Dr. Meyer talked about my depression and told me that they didn't think I should be a doctor. They withheld this critical notice from me. And, if you don't have the . . . That's why those fact issues in the due process claim are critical. Because, if you don't have the November 21st . . . the November 1st, 2016 letter that Filippetto says he hand-delivered on November 3rd, then John Doe has no idea what he's supposed to do, other than what they verbally told him. I see I'm out of time, Your Honor. Thank you for your questions. Yes, you've saved time for about . . . Thank you. Mr. Harris? Thank you, Your Honor. May it please the Court. This Court should affirm, because the District Court correctly applied the res judicata standard, as the actual harm that Doe complains about in both the first and second lawsuit is being academically dismissed. Further, the due process standard for an academic dismissal course is notice and an opportunity to be heard. And, there's no fact dispute that the University sent three notices, the July 10th notice, the July 17th notice, and the July 25th notice. And, further, there's also no fact dispute that John Doe physically received the July 25th notice, which was hand-delivered to him by Dr. Mormon. So, therefore, there's no fact dispute . . . What did the July 25th notice say and provide? It said, basically, something similar to the prior ones, that he did not comply with the terms of the November 1st, 2016 letter. And, therefore, he was being dismissed, that the SPC was dismissing him for those reasons. In other words, it was giving him, the student, the reasons for the faculty's dissatisfaction with his performance. And, after he received the July 25th notice, he availed himself of an opportunity to be heard on appeal. He appealed. So, therefore, there's not really any material factual disputes here. And, summary judgment . . . Which notice did he appeal? He appealed the July 25th notice. So, I want to make three quick points. First, is that two of the three appellees, that's Meyer and Mormon, did not play any role in the decision to academically dismiss the plaintiff. In fact, they were just the messenger. And, this is a case where, you know, Dr. Mormon was sued because he was literally just the messenger who delivered the July 25th notice to the plaintiff. And, you'll notice that Mormon and Meyer were virtually ignored entirely in the opening argument, because they really shouldn't be sued in this case. In any event, also with respect to these university officials, the second point I want to make is that the plaintiff is trying to argue, or appellant is arguing, some sort of categorical exception to qualified immunity for university administrators. But, this argument is clearly foreclosed by the rule of orderliness, in that this panel cannot overturn another panel's decision unless there's some intervening change in the law. And, another recent Fifth Circuit panel held just last year in the Babinski versus Sanofsky case, that qualified immunity applies to university administrators. Now, the third point I want to make is that the bulk of their briefing and their argument, again, is really focusing on this red herring, the November 1, 2016 letter that he didn't get, that he alleges, he unilaterally says, he did not get. But, there's no cause of action for just simply not getting a letter. The harm, the actual cause of action is for his, the harm. In the record, is there specific evidence that the letter they sent him was not returned? Was it sent by email or by U.S.? It was hand-delivered, and that's the reason why— Is that the one it says he didn't get that was hand-delivered? So, that's the reason he has unilaterally created a fact issue in that there was a meeting, and there's evidence, extrinsic evidence, that the meeting happened. It's undisputed that the meeting happened. The—Dr. Filippetto, of course, testified that he hand-delivered this letter, and the appellant testified he did not receive the letter. And so— Is this the same letter that he says he didn't get in October? In October? I thought there was a letter sent in October. Maybe I'm mistaken. I think—so, he's claiming that the initial letter that set out the terms of his medical leave, he says that he never got that letter, even though there's testimony and evidence that indicates it was hand-delivered to him. There's contemporaneous emails from the person who hand-delivered it saying, I hand-delivered this letter. But he, of course, has claimed, you know, now. What's curious, though, is that even though the appeal that he submitted, the document, the July 25th notice that said he could appeal, it explicitly says the reason you are being dismissed is because you did not comply with the November 1st, 2016 letter. So you would have thought that his appeal would have said, I never received the November 1st, 2016 letter. But the appeal, which is on page 542 of the record, the appeal, curiously, does not mention anything about not getting this letter. And he raised that first in connection with this litigation? Correct, Your Honor. But even if he didn't get the letter, your contention is that the things he did get, he didn't respond to, and that that's critical. That's correct. Okay, what if he hadn't gotten the November letter but showed up to the very first thing he did get by email? What would have happened that's different? Well, if he would have talked to a whole committee, not just Dr. Filippetto, but he would have talked to a whole committee, and he could have told them, hey, I did not know the conditions. I need more time. I need, you know, additional time. I want to request an extension. He did not even show up to the hearing to request an extension. And so I will say that this case is an example of why the Supreme Court and Horowitz caution courts to stay outside of academic determinations. Because in this case, you can sort of analogize this November 1st, 2016 letter as like maybe the requirements of a test. This is akin to a student complaining he didn't know what the requirements of the test are, and then he proceeded to fail. If he failed the test, he's claiming it's a denial of due process, that he was not given the study guide for the test. But that's not what due process requires. Assuming, as this court and the Supreme Court assume that there's a protected due process interest in the education, assuming that that's correct, the only thing that's required is that you give the student some notice of the why, the reason for the faculty's dissatisfaction, and an opportunity to be heard. And there's no material fact dispute in this case that both of those things happened. What is he seeking in this case besides damages? He's not, is he seeking reinstatement? Yes, he's seeking to be reinstated to the medical school. And... And why don't y'all want him? When you have a student, the University of UNTHSC, my client, they need to hold a certain standard for the doctors that they produce. And those standards include diligence and following directions. There's a certain concern, I think the public would be concerned if a university was issuing, you know, graduating doctors who did not, could not follow basic instructions and comply with certain deadlines. That lack of diligence... There was, I think in the record, testimony for some... Any indication that he had resolved his problems and that he was now fully responsible and no longer had these hesitations about his life? So he had indicated when he got the medical leave that part of the reason he needed the medical leave was that he was feeling apathetic towards his future as a doctor. That was his own words. And... Again, if the university at some point would have gotten to the point to evaluate that more closely, but they didn't need to get there. There were simple basic instructions of you need to show up before this SPC and explain yourself. And if he can't do that, if he doesn't do that, if he doesn't check his email, then the university can academically dismiss him. And in the process to, you know, in the process of complying with the constitutional requirements of due process. I mean, he certainly showed irresponsibility, if nothing else. And if there are no further questions, I will pass the remainder of my time. Thank you, Mr. Harris. Mr. Carney for revote. Thank you. So I want to start back where my friend started with saying Mr. Doe didn't pass a test. The analogy is bad for this case because it's like UNT Health Science Center gave him a test, didn't tell him what's going to be on the test, and didn't tell him where to take it. If you don't have the November 1, 2016 letter, then you don't know where you're going to need to show up, what you're going to need to do at the test, and where the test is going to be administered. Well, I think if the whole case was about the November letter, it might be in a little different bucket. But you have this situation of the June emails that he didn't respond to, and he didn't come and defend himself. So if we had this oral argument and you didn't show up for it, maybe that wouldn't be determinative, but it would be problematic. So, again, why isn't that sufficient for the due process? Because the due process is a little bit low in this arena. It's low for an academic appeal, but I want to say two things in response to your question. One is the due process concerns should still be screaming in this case. The public should also be concerned if university administrators are just able to willy-nilly yank your career out from under you without any notice in your fourth year of school, after they don't dispute that you already completed successfully three years of school without issue. And then the second thing I want to say is, well, again, he gave them a new email address. He gave them his personal email address. I understand, but you admitted that he still had access to the school email. It's not like they took his school email away from him and yet wrote to it. That would be a different animal. They wrote to something he could get, he just didn't read. That's correct, but there wasn't any written requirement like you need to be checking your email every day while you're on medical leave of absence, which would be kind of contradictory. Okay, but by the time they sent that, it was many months later. It would seem like he'd be kind of interested in knowing how do I come back once he's getting better, as opposed to like the day after you just had surgery or something. You don't certainly check all your emails and whatever, but several months later, which is what this is, and I know he didn't get surgery, but you know what I mean, several months later, why wouldn't he be trying to find, if he wasn't getting emails because he didn't think to look at the school, why wouldn't he be checking? Well, Judge Haynes, he didn't expect that the school would be sending him any kind of formal emails because they expressly told him that he was going to be able to return in July 2017. They just told him he needed to get better and he needed to take care of his NCE exam. He passed that exam. The school has the score, knows that he passed it, and then whenever one other piece of context I also want to provide that I didn't focus on before is also that the doctor he went to to see about getting better is a UNT Health Science Center clinic doctor, Dr. Kasinick in the record, and she's named in the briefs, but I can't give you a page site at the moment, but it's not like he just totally was spaced out and not doing anything. He passed a national board exam while he was on medical leave of absence. He went and saw a physician at the campus, and sometimes, just from a real-life perspective, sometimes students assume that administrators are talking to each other a little more than they are, and sometimes the left hand doesn't talk to the right, but in this situation, he was making steps. He just didn't know that he needed to have a specific email with Dr. Filippetto or Dr. Meyer by May 1st of that year, and that's what they held against him, and then they held against him during the appeal. One thing I want to mention is in that appeal notice where it has the date of the November 1st, 2016 letter, John Doe didn't have the letter. He had an email on that date with a different letter, and he had his medical leave of absence form, so when he reads that date, he's confused and thinks they're talking about him not complying with the conditions on the medical leave of absence form that he signed and that Dr. Filippetto countersigned, and so he explained to them he should be allowed to come back because he was almost done with those requirements, and they said, too bad you didn't do it by May 1, so they're holding against him for being irresponsible, supposedly, conditions that they never told him about. There should be a concern with how much money, time, and energy he put into his diploma that a school can just do that without providing him at least a piece of paper that says these are the steps you have to take. He wasn't afforded that notice, and I see that I'm out of time, and I thank this Court for your consideration. Thank you, Mr. Cline. The case is under submission, and the Court is in recess.